**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

KEPHART CONSULTING, LLC,

                Plaintiff,

      vs.

FACEFIRST, INC.,

           Defendant.

Case No.:  7:24-cv-234-DC-DTG

**DEFENDANT FACEFIRST, INC.'S MOTION TO DISMISS PLAINTIFF KEPHART**
**CONSULTING, LLC'S COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..........................................................................................................1

II.    FACTUAL BACKGROUND .....................................................................................2

    A.    Patents In Suit ...............................................................................................2

    B.    FaceFirst and the Accused Product..............................................................4

III.    THE COMPLAINT FAILS TO STATE A PATENT INFRINGEMENT CLAIM.........................................................................................................................5

    A.    The patents in suit are invalid under 35 U.S.C. § 101 ........................................6

        1.    Abstract ideas are ineligible for patenting .................................6

        2.    A motion under Rule 12(b)(6) is the appropriate procedure for challenging the patents in suit under 35 U.S.C. § 101 ............................7

        3.    *Alice* Step 1 ..........................................................................7

        4.    *Alice* Step 2 ..........................................................................9

    B.    The Complaint fails to plausibly allege patent infringement...........................11

        1.    A single party cannot perform all steps of the claimed methods............12

        2.    The Complaint fails to allege FaceFirst puts the claimed systems into service ................................................................14

        3.    The Complaint contradicts Kephart's infringement allegations .............15

        4.    The Complaint fails to state a claim that FaceFirst indirectly infringes the patents in suit ....................................................17

IV.    VENUE IS NOT PROPER IN THE WESTERN DISTRICT OF TEXAS ...................18

V.    CONCLUSION..........................................................................................................19

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page(s)**</u>

**FEDERAL CASES**

*Addiction and Detoxification Institute L.L.C. v. Carpenter*,
620 Fed.Appx. 934 (Fed. Cir. 2015) ........................................................................17

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
797 F.3d 1020 (Fed. Cir. 2015)................................................................................12

*Alice Corp. Pty. Ltd v. CLS Bank Int'l*,
573 U.S. 208 (2014)........................................................................1, 6, 7, 9, 11

*Angel Techs. Group, LLC v. Meta Platforms, Inc.*,
No. 2022-2100, 2024 WL 4212196 (Fed. Cir. Sept. 17, 2024) ...........................7, 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................5, 14

*Blue Spike, LLC v. Google, Inc.*,
No. 14-cv-01650, 2015 WL 5260506 (N.D. Cal. Sept. 8, 2015),
*aff'd*, 669 F. App'x. 575 (Fed. Cir. 2016), *cert. denied*, 582 U.S. 904 (2017) ........................8

*Bot M8 LLC v. Sony Corp. of America*,
4 F.4th 1342 (Fed. Cir. 2021) ...............................................................................15

*Centillion Data Sys., LLC v. Qwest Comm'ns Int'l., Inc.*,
631 F.3d 1279 (Fed. Cir. 2011)..................................................................14, 15, 16

*CloudofChange, LLC v. NCR Corp.*,
123 F.4th 1333 (Fed. Cir. 2024) ......................................................................15, 16

*Commil USA, LLC v. Cisco Sys., Inc.*,
575 U.S. 632 (2015)...............................................................................................17

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l. Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014)................................................................................9

*Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.*,
424 F.3d 1293 (Fed. Cir. 2005)..............................................................................15

*Electric Power Group, LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016)............................................................................6, 8

*FacetoFace Biometrics, Inc. v. Apple, Inc.*,
4:22 CV 429, 2023 WL 2561758 (E.D. Mo. Mar. 17, 2023) ...........................8, 10

**Page(s)**

**FEDERAL CASES (CONT.)**

*Fitbit Inc. v. AliphCom,*
No. 16-cv-00118, 2017 WL 819235 (N.D. Cal. Mar. 2, 2017) ................................................10

*Front Row Techs., LLC v. Cisco Systems, Inc.,*
6:23-CV-00035-AM, 2023 WL 11800705 (W.D. Tex. Sept. 13, 2023)...................................7

*Haley IP, LLC v. Motive Techs., Inc.,*
No. 23-cv-02923, 2023 WL 7003265 (N.D. Cal. Oct. 23, 2023) ...........................................8

*Int'l Bus. Machines Corp. v. Zillow Group, Inc.,*
50 F.4th 1371 (Fed. Cir. 2022) .........................................................................................9, 11

*Intellectual Ventures I LLC v. Capital One Bank (USA),*
792 F.3d 1363 (Fed. Cir. 2015)...........................................................................................8

*Internet Patents Corp. v. Active Network, Inc.,*
790 F.3d 1343 (Fed. Cir. 2015)...........................................................................................6

*Intirion Corp. v. College Prods.,*
669 F. Supp. 3d 650 (W.D. Tex. 2023)...............................................................................18

*Joy Techs., Inc. v. Flakt, Inc.,*
6 F.3d 770 (Fed. Cir. 1993) .................................................................................................17

*Limelight Networks, Inc. v. Akamai Techs., Inc.,*
572 U.S. 915 (2014)..............................................................................................................17

*Mobile Acuity Ltd. v. Blippar Ltd.,*
110 F. 4th 1280 (Fed. Cir. 2024) ........................................................................................11

*Mortgage Grader, Inc. v. First Choice Loan Services Inc.,*
811 F.3d 1314 (Fed. Cir. 2017)............................................................................................9

*SAP Am., Inc. v. InvestPic, LLC,*
898 F.3d 1161 (Fed. Cir. 2018)............................................................................................7

*Secured Mail Solutions LLC v. Universal Wilde, Inc.,*
873 F.3d 905 (Fed. Cir. 2017)..............................................................................................7

*Synchronoss Techs., Inc. v. Dropbox, Inc.,*
987 F.3d 1358 (Fed. Cir. 2021)......................................................................................14, 16

*TC Heartland LLC v. Kraft Foods Group Brands LLC,*
581 U.S. 258 (2017)..............................................................................................................18

**Page(s)**

**FEDERAL CASES (CONT.)**

*Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015)................................................................................9

*Trinity Info Media, LLC v. Covalent, Inc.*,
    72 F.4th 1355 (Fed. Cir. 2023) ...........................................................................6, 7

*Two-Way Media Ltd. v. Comcast Cable Comms.*,
    874 F.3d 1329 (Fed. Cir. 2017)..............................................................................10

*Wolf v. Capstone Photography, Inc.*,
    No. 2:13-cv-09573, 2014 WL 7639820 (C.D. Cal. Oct. 28, 2014) ........................8

**FEDERAL STATUTES**

28 U.S.C. § 1400(b) ...................................................................................2, 18, 19

35 U.S.C. § 101 .................................................................................1, 5, 6, 7, 11

**RULES**

Federal Rule of Civil Procedure 12(b)(3) ....................................................18

Federal Rule of Civil Procedure 12(b)(6) .................................................5, 7

Defendant FaceFirst, Inc. files this Motion to Dismiss Plaintiff Kephart Consulting, LLC ("Kephart")'s Complaint pursuant to Rules 12(b)(6) and 12(b)(3) of the Federal Rules of Civil Procedure.

## I.   **INTRODUCTION**

Kephart's Complaint claims FaceFirst directly and indirectly infringes U.S. Patent Nos. 10,796,137 (the "'137 patent); No. 9,773,161 (the "'161 patent"); and No. 10,248,849 (the "'849 patent") (collectively, the "patents in suit").  All three patents in suit are directed to systems and methods for identifying security threats at an event or venue by comparing photographs of the attendees to a third-party database of prior offenders.  Kephart's Complaint fails to state a claim of patent infringement for two principal reasons.

First, the subject matter of all three patents is ineligible for patenting under 35 U.S.C. § 101.  The patents in suit are directed to the abstract idea of comparing a photograph of a person to a collection of images representing potential security threats to identify a match.  The idea of identifying something, such as a person attending an event, by comparing an image of that thing to a collection of other images (e.g., booking photos or "mug shots" taken of people arrested by police) in the hopes of finding a match is a basic and intuitive mental process that humans have always used.  The claims contain no inventive concept that elevates them above this abstract idea.  To the contrary, the entire invention consists of generic steps arranged in a conventional way and implemented using conventional, commercially available technology.  Accordingly, the patents in suit fail the Supreme Court's two-part test for eligible subject matter.  *Alice Corp. Pty. Ltd v. CLS Bank Int'l*, 573 U.S. 208 (2014).

Second, the Complaint fails to plausibly allege infringement.  Indeed, the unusual structure of the asserted claims makes infringement virtually impossible.  The claims necessarily

require the coordinated action of at least two separate parties. To meet the elements of the claims, one party must control the process of taking pictures of the venue attendees, while a different party controls the database, and, necessarily, the process of making the comparison to identify a match. As a consequence, no single party can practice all the steps of the claimed methods or control the entire claimed systems. Even if the patents in suit could somehow be infringed by someone, the Complaint and appended claim charts make clear that the accused product does not infringe. The accused product is FaceFirst's software platform. But the asserted claims include numerous hardware components, including cameras, computer circuits, and entry ports. As depicted in Kephart's claim charts, FaceFirst's software does not include any such physical components.

Kephart's indirect infringement claims fail, too. The division of claim elements between separate parties means there can be no direct infringement, and without direct infringement, there can be no indirect infringement. Kephart also fails to allege FaceFirst knew about the patents in suit or intended to infringe the patents, as required for indirect infringement.

The Complaint should also be dismissed for improper venue under the patent venue statute. 28 U.S.C. § 1400(b). FaceFirst is not a resident of the Western District of Texas, and the declaration of its CEO establishes that FaceFirst has not made, used, sold, or offered to sell the accused product in the Western District of Texas.

For all these reasons, and as discussed further below, Kephart's Complaint should be dismissed with prejudice.

## II.    FACTUAL BACKGROUND

### A.    Patents In Suit

The Complaint alleges direct and indirect infringement of three U.S. Patents: No. 10,796,137 (the "'137 patent); No. 9,773,161 (the "'161 patent"); and No. 10,248,849 (the "'849

patent"). The three patents share a common specification, and are all generally directed to "methods and systems for comparing captured facial images to a database of facial data for persons of interest and alerting security personnel." Dkt. 1 (Complaint) ¶¶ 7, 15, 23.

The '137 patent consists of 23 system and method claims, of which claims 1, 12, and 23 are independent. The '161 patent consists of 13 claims, all methods, with claim 1 as the single independent claim. The '849 patent consists of 12 claims, of which claim 1 (a method) and claim 17 (a system) are independent. All claims in all three patents are directed to the same idea, with trivial distinctions. In general, the patents involve taking pictures of patrons at a venue, such as a stadium, comparing the photos to a database of facial images of persons of interest, and alerting security personnel at the venue if a match is detected. Claim 1 of the '137 patent, reproduced below, is representative:

1.  A system for providing security, the system comprising:

    a.  at least one camera configured to capture a photographic image of a person in view of the at least one camera; and

    b.  a computer circuit configured to:

        i.  receive the captured photographic image of the person in view of at least one camera,

        ii.  transmit the captured photographic image of the person in view of the at least one camera for a process to be performed for comparing the captured photographic image of the person in view of the at least one camera to facial images of persons of interest included in a database to detect a likely match,

        iii.  receive an alert that the person in view of the at least one camera is a person of interest in response to a detection of the likely match between the captured photographic image of the person in view of the at least one camera and a facial image of the person of interest, and

        iv.  control to alert at least one or more law enforcement officers or one or more security personnel of the detection of the likely match between the captured photographic image of the person in view of the at least one camera and the facial image of the person of interest,

     c.   wherein the system is controlled by a first party and the database is controlled by a second party.

Dkt. 1-1 at cols. 17:53-18:13.

Critically, all claims of the patents in suit divide the key elements between two separate parties. One party controls the venue where patrons faces' are photographed, and a different party controls the database of facial images to which the photographs are compared. *E.g.*, Dkt. 1-1 ('137 patent), col. 18:12-13 ("where the system is controlled by a first party and the database is controlled by a second party"); Dkt 1-3 ('161 patent), col. 18:8-9 ("wherein the database is a third party databased controlled by the third party"); Dkt. 1-5 ('849 patent), col. 18:10-11 ("wherein the secure area is controlled by a first party and the database is controlled by a second party").

According to the specification, the entire invention is implemented using conventional components, such as generic cameras, computers, video monitors, internet connections, databases and commercially available facial recognition software. *See, e.g.*, Dkt. 1-1 at cols. 2:60-3:1, 5:30-33, 11:5-8, 11:25-38, 11:43-46, 12:15-33, 12:43-50, 13:2-4, 17:54-55, 14:27-39, 15:7-9.

### B.    FaceFirst and the Accused Product

FaceFirst is a Delaware corporation. Dkt. 1 ¶ 2; Decl. of D. Merkle, Jan. 30, 2025, ¶ 4. The accused product is a software platform for retail security that FaceFirst sells/licenses. *See* Dkt. 1-2 at pp. 2-8. Although FaceFirst rents a single cubicle of office space in Austin, Texas that office is not involved in developing, using, or selling the accused software. Merkle Decl., ¶¶ 5-7. FaceFirst has not sold or deployed the accused software to anyone in the Western District of Texas; it is not used in this district. *Id.* ¶ 8.

The accused software enables a retailer to compile a database of images of persons who commit theft or other unlawful acts at its stores and identify when such persons return to the premises. *See* Dkt. 1-2 at pp. 2-8. Claim charts filed with the Complaint include alleged excerpts from FaceFirst's website describing the software. Dkts. 1-2, 1-4, 1-6. These claim charts show that while the software is compatible with third party hardware, such as various kinds of cameras, the accused product is limited to software and does not include hardware components. *See* Dkt. 1-2 at pp. 2-8.

## III.    THE COMPLAINT FAILS TO STATE A PATENT INFRINGEMENT CLAIM.

The court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Kephart fails to state a claim for two separate and independent reasons. First, the patents in suit are invalid under 35 U.S.C. § 101 because they claim nothing more than a patent-ineligible abstract idea. Second, neither FaceFirst nor any other single party is capable of infringing the patents in suit, and even the patents in suit could be infringed, the Complaint and its attachments make clear that the accused product does not infringe.

A.    **The patents in suit are invalid under 35 U.S.C. § 101.**

1.    **Abstract ideas are ineligible for patenting.**

In general, a patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. However, the Supreme Court has long held that this scope of patentable subject matter does not extend to "laws of nature, natural phenomena, and abstract ideas." *Alice Corp. Pty. Ltd v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). In *Alice*, the Court articulated a two-step test to determine whether a claim is directed to a patent ineligible concept.

*<u>Alice</u> Step 1.*    The first step is to "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* at 217. In this step, " the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). "A telltale sign of abstraction is when the claimed functions are mental process that can be performed in the human mind." *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1361-62 (Fed. Cir. 2023). Thus, the process of "analyzing information by steps people go through in their minds" falls within the abstract-idea category of patent-ineligible subject matter. *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) (holding that patent on "collecting information, analyzing it, and displaying certain results of the collection and analysis" claimed an ineligible abstract idea).

*<u>Alice</u> Step 2.*    In the second step, the court "consider[s] the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Alice*, 573 U.S. at 217 (cleaned up). In other words, the claims must disclose an "inventive concept" that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the

ineligible concept itself." *Id.* at 217-18. Simply implementing an abstract idea using conventional technology does not render the idea patentable. *Id.* at 222. "What is needed is an inventive concept in the non-abstract application realm." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1168 (Fed. Cir. 2018).

### 2.    A motion under Rule 12(b)(6) is the appropriate procedure for challenging the patents in suit under 35 U.S.C. § 101.

Patent eligibility under *Alice* is a question of law that may be decided based on the "intrinsic evidence from the specification without need for extraneous fact finding outside the record." *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912 (Fed. Cir. 2017). Accordingly, the Federal Circuit has "repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced." *Trinity Info*, 72 F.4th at 1360; *see also, e.g.*, *Front Row Techs., LLC v. Cisco Systems, Inc.*, 6:23-CV-00035-AM, 2023 WL 11800705, at *3-4 (W.D. Tex. Sept. 13, 2023).

### 3.    *Alice* Step 1:  The patents in suit are directed to an abstract idea.

The patents in suit claim the abstract idea of comparing a photograph of a person to a collection of images of people representing potential security threats and then notifying others if a match is detected. The idea at the heart of the patents in suit—identifying things by visual comparison to a set of known examples—is a fundamental mental process humans have always used. *See Angel Techs. Group, LLC v. Meta Platforms, Inc.*, No. 2022-2100, 2024 WL 4212196, at *5 (Fed. Cir. Sept. 17, 2024) ("Choosing an item from a list of items is a mental process that has been performed by humans for ages."). Identifying a crime suspect by comparison to a set of mug shots or a lineup, for example, is a ubiquitous scene in police procedurals. A bird watcher uses the same mental process when identifying a bird by comparison to images in a field guide. The same process is at work when one finds a particular word in an index or dictionary. The

patents in suit are thus directed to the sort of "fundamental . . . practice long prevalent in our system" that is ineligible for patenting. *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) (quoting *Alice*).

That the patents in suit are limited to the field of security does not render their claims any less abstract. "Most obviously, limiting the claims to the particular technological environment" of event security "is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core." *Electric Power Group*, 830 F.3d at 1354; *Capital One*, 792 F.3d at 1367 ("An abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment."). Indeed, the idea that "[o]ne might . . . identify a criminal by comparing a police artist sketch to various suspect photographs" is a patent-ineligible human mental process. *Blue Spike, LLC v. Google, Inc.*, No. 14-cv-01650, 2015 WL 5260506, at *6 (N.D. Cal. Sept. 8, 2015), *aff'd*, 669 F. App'x. 575 (Fed. Cir. 2016), *cert. denied*, 582 U.S. 904 (2017). The court in *Blue Spike* thus invalidated a group of patents directed to the abstract idea of using computers to "determin[e] whether one piece of content— e.g., a picture, a song, or a video—matches another, or the extent to which they are similar." *Id.* at *2; *see also, e.g.*, *Haley IP, LLC v. Motive Techs., Inc.*, No. 23-cv-02923, 2023 WL 7003265, at *4 (N.D. Cal. Oct. 23, 2023) (taking photographs of automobile drivers and using facial recognition to identify them is an abstract idea); *FacetoFace Biometrics, Inc. v. Apple, Inc.*, 4:22 CV 429, 2023 WL 2561758, at *6-8 (E.D. Mo. Mar. 17, 2023) ("sharing facial expressions by collecting and transmitting a particular type of data using conventional cameras, computers, and digital messages" is an abstract idea); *Wolf v. Capstone Photography, Inc.*, No. 2:13-cv-09573, 2014 WL 7639820, at *10 (C.D. Cal. Oct. 28, 2014) (matching photographs

of event participants and making the photographs available for inspection and ordering is an abstract idea).

While the above discussion focuses on the crux of the purported invention—identifying a match to a database of facial imagery—the additional steps of taking the photograph and alerting security personnel when a match is detected are no less abstract.  *See Angel Techs.*, 2024 WL 4212196 at *5 ("Merely adding another abstract idea to the claim does not make the claim less abstract.")  Again, these actions are "undisputedly well-known" and "humans have always performed these functions."  *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014).  Indeed, that all the essential steps of the purported invention could be performed by one or two humans with nothing but a camera is a sure sign of abstraction.  *See Mortgage Grader, Inc. v. First Choice Loan Services Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2017) (process was abstract where claimed steps "could all be performed by humans without a computer").  A person could take a photograph and compare the photograph to a gallery of images.  Once the person identifies a match, the person could alert security to take action.  Using a computer to perform these tasks more conveniently than a human does not transform the claims into patentable subject matter.  *See Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) ("Relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible.").

### 4.    *Alice* Step 2:  The patents in suit contain no inventive concept.

None of the asserted claims reveal an "inventive concept" required to elevate them above an abstract idea.  *Alice*, 573 U.S. at 221.  Rather, as exemplified by representative claim 1 of the '137 patent, the claim elements merely restate "the abstract goals of the invention" using "purely functional steps."  *Int'l Bus. Machines Corp. v. Zillow Group, Inc.*, 50 F.4th 1371, 1382 (Fed. Cir. 2022).  Further underscoring the absence of any inventive concept, "[t]he steps are

organized in a completely conventional way." *Two-Way Media Ltd. v. Comcast Cable Comms.*, 874 F.3d 1329, 1341 (Fed. Cir. 2017).

The first component of the system of claim 1 is a generic camera. Dkt. 1-1 at col. 17:54-55. The second is a generic "computer circuit" described in purely functional terms to receive a photo, transmit the photo to someone else for comparison to a database, receive notice of a match, and alert security personnel. *Id.* at cols. 17:57-18:10. None of the claims are directed to any particular technological advance to better achieve these goals. Tellingly, the crucial step of comparing photographs to a database to identify a match is outsourced to a third party and left unexplained and unlimited. Claims that recite result-oriented steps without explaining how those steps are accomplished, as here, are consistently held to be nothing more than abstract ideas. *See, e.g.*, *FacetoFace Biometrics,* 2023 WL 2561758 at *6 (claims were abstract where they failed to "provide any explanation of how the results-oriented steps of 'receiving,' 'monitoring,' 'generating,' and 'routing' facial expressions are accomplished"); *Fitbit Inc. v. AliphCom*, No. 16-cv-00118, 2017 WL 819235, at *15 (N.D. Cal. Mar. 2, 2017) (finding claims lacked inventive concept where they recited "generic, black-box computing functions" such as "receiving," "processing," and "comparing" without requiring "a new source or type of information, or new techniques for analyzing it").

As the common specification of the patents in suit makes clear, each step or process of the purported invention is carried out using conventional technology. For example, the specification suggests using the "Face Match" module of the commercially available "COPLINK®" software to perform the facial recognition. *Id.* at col. 11:25-38. The photos used "can be in any one of the commonly-used photographic image formats, including JPG, JPE, TIF, and BMP." *Id.* at col. 11:43-46. The details of how "Face Match" actually works are

"proprietary," *id.* at col. 11:29-30, but regardless, the claims are not limited to any particular facial recognition technology. Indeed, the claims do not require any technology at all, and would even cover someone visually comparing the photo of a person of interest to photos in the database and using their own mind to recognize a match.

The database can be located at a "fusion center," which the patents in suit say government agencies have used since at least the terrorist attacks on September 11, 2001. *Id.* at col. 14:27-39. The database itself can be "maintained by government agencies" and includes "motor vehicle driver license records." *Id.* at col. 14:20-25. Communication between an event venue and a "fusion center" uses a "high speed Internet Gateway." *Id.* at col. 15:7-9. Alerts of a match can be displayed on "the video touchscreen display of a conventional 'smartphone' issued to law enforcement officers." *Id.* at col. 13:2-4. Other generic components of the system include cameras, computers, ticket scanners, turnstiles, tickets bearing seat assignment information, and video displays. *See, e.g.*, *id.* at cols. 2:60-3:1, 5:30-33, 11:5-8, 12:15-33, 12:43-50.

In sum, the patents in suit claim nothing more than the *idea* of improving security by comparing photos of event attendees to separate databases of prior offenders using conventional technology. That "is simply not enough under step two" of *Alice* to transform an abstract idea into patentable subject matter. *Zillow Group*, 50 F.4th at 1382. Claims reciting "generalized steps of collecting, analyzing, and presenting information, using nothing other than the conventional operations of generic computer components, are directed to abstract ideas." *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F. 4th 1280, 1293 (Fed. Cir. 2024).

**B.    The Complaint fails to plausibly allege patent infringement.**

Invalidity of the patents in suit under 35 U.S.C. § 101 is reason enough to dismiss the Complaint with prejudice, but the Complaint should also be dismissed because it fails to plausibly allege patent infringement. Kephart's attempt to allege FaceFirst directly infringes any

of the patents in suit is defective in at least two ways.  First, all of the patents in suit *require*

divided practice of the claimed methods and operation of the claimed systems between multiple

distinct entities.  It is therefore impossible for FaceFirst or any other single entity to practice all

elements of any of the claims.  Second, the Complaint's comparison of the accused product to

representative claims of each patent in suit shows that the accused product, a software platform,

does not infringe.

### 1.    A single party cannot perform all steps of the claimed methods.

Direct infringement of a method claim requires all steps of the claimed method be

performed by or attributable to a single entity.  *Akamai Techs., Inc. v. Limelight Networks, Inc.*,

797 F.3d 1020, 1022 (Fed. Cir. 2015).  A single entity is responsible for another's performance

of method steps where the single entity "directs or controls others' performance" or where the

entities form a joint enterprise.  *Id.*

Here, all the method claims of the patents in suit require at least two separate parties to

perform all the steps.  A first party controls the steps related to taking and transmitting a photo of

a person while a "second party" or "third party" compares the photo to a facial imagery database.

Relevant elements from representative method claims of each patent in suit are shown in the

following table:

| '137 Patent, Claim 12<br>Dkt. 1-1 at col. 19:3-22 | '161 Patent, Claim 1<br>Dkt. 1-3 at cols. 17:55-18:9 | '849 Patent, Claim 1<br>Dkt. 1-5 at cols. 17:55-18:11 |
|---|---|---|
| "receiving a photograph image captured by at least one camera of a person" | "forming a photographic image of each person who approaches the . . . entry port" | "capturing a photographic image of each person who approaches the . . . entry port seeking entry into the secure area" |
| "comparing the captured photographic image of the person . . . to facial images of | "comparing the photographic image . . . to facial images | "comparing the photographic image . . . to facial images |

| persons of interest included in a database" | compiled in a database of facial images" | compiled in a database of facial images" |
|---|---|---|
| "wherein the . . . camera is controlled by a ***first party*** and the database is controlled by a ***second party***."  (emphasis added) | "wherein the database is a ***third party database*** controlled by the ***third party***." (emphasis added) | "wherein the secure area is controlled by a ***first party*** and the database is controlled by a ***second party***."  (emphasis added) |

As a consequence, no single entity can perform all the steps of any of the claimed methods.  FaceFirst, or any other single entity, could infringe the method claims only if it performed the steps of the "first party" and directed or controlled, or formed a joint enterprise with, the "second" or "third" party in charge of the database (or *vice versa*).  The Complaint contains no such allegations.  Moreover, any attempt to amend the Complaint to allege direction or control or joint enterprise would be incompatible with the claims, which universally require independent control of the database.

The Complaint at most alleges that a user of FaceFirst's software can generate a database accessible from multiple *locations* controlled by that single user.  *E.g.*, Dkt. 1-4 at 10-11 ("Retailers can quickly scale and share their proprietary intelligence across thousands of ***their*** locations." [emphasis added]).  The Complaint thus confirms that when the accused product is used, the steps of taking of photo of a person and comparing it to a database are performed by a single party.  In other words, according to the Complaint and its attached claim charts, the accused product does not divide those steps between a "first party" on the one hand and a "second party" or "third party" on the other, as all the asserted claims require.   For these reasons, Kephart fails to state a claim for direct infringement of the method claims of the asserted patents (claims 12-23 of '137 patent; claims 1-13 of the '161 patent; claims 1-16 of the '849 patent).

2. **The Complaint fails to allege FaceFirst puts the claimed systems into service.**

For similar reasons, the Complaint fails to state a claim that FaceFirst directly infringes the remaining system claims by using the accused product. "[T]o 'use' a system for purposes of infringement, a party must put the invention into service, i.e., control the system as a whole and obtain benefit from it." *Centillion Data Sys., LLC v. Qwest Comm'ns Int'l., Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011). Such use "requires use of each and every element of the system." *Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1369 (Fed. Cir. 2021). The Complaint's allegation that FaceFirst "put the inventions claimed by the [patents in suit] into service" merely tracks the legal standard without alleging any facts to show FaceFirst purportedly controls the system as a whole. Dkt. 1 ¶¶ 8, 16, 24. Kephart's conclusory allegations are not enough to state a claim. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice.").

The deficiencies in Kephart's attempt to allege use of the claimed system go beyond conclusory allegations. As with the method claims, under the unusual structure of the system claims it is impossible for any single party to put the entire system into practice. All the asserted system claims divide control of the system between two separate parties. One party controls the means for photographing people while a "second" or "third" party expressly "control[s]" the database to which the photographs are compared. Dkt. 1-1 at col. 18:12-13; Dkt. 1-5 at col. 20:27-28. The claims thus require separate and independent "control" of the principal components of the system. According to the elements of the asserted claims themselves, no single party is capable of "control[ling] the system as a whole." *Centillion*, 631 F.3d at 1284. FaceFirst therefore does not, and cannot, use the claimed system.

In addition, Kephart's allegation that FaceFirst "benefits" from the patented system because it received "monetary and commercial benefit" from others' alleged use of the system misunderstands the "benefit" prong of *Centillion's* control-benefit test. Financial compensation from selling the accused product is "not the kind of benefit[] on which *Centillion* focuses." *CloudofChange, LLC v. NCR Corp.*, 123 F.4th 1333, 1340-41 (Fed. Cir. 2024). Rather the "benefit" in the control-benefit test is "the recited purpose or result" of the claimed invention. *Id.* at 1341. The Complaint does not allege that FaceFirst benefits in that sense from use of the accused product at its own retail locations (of which it has none).

As discussed further below, Kephart also fails to plausibly allege that FaceFirst makes, sells, or offers to sell the claimed system.

### 3.    The Complaint contradicts Kephart's infringement allegations.

Even if it were possible for FaceFirst to infringe the patents in suit, the Complaint establishes that FaceFirst does not infringe. Direct infringement requires that "each and every limitation set forth in a claim appear in an accused product." *Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005). Here, the allegations of the Complaint affirmatively demonstrate that the accused product lacks various hardware and other physical components required by the asserted claims. *See Bot M8 LLC v. Sony Corp. of America*, 4 F.4th 1342, 1354 (Fed. Cir. 2021) ("Where, as here, the factual allegations are actually *inconsistent* with and contradict infringement, they are . . . insufficient to state a plausible claim.").

According to the Complaint and its attachments, the accused product is software. The patents in suit, by contrast, claim methods and systems involving numerous hardware components, such as "at least one camera" (Dkt. 1-1 at col. 17:54); "a computer circuit" (*id.* at col. 17:57); and "at least one entry port" (Dkt. 1-3 at col. 17:53). The Federal Circuit has

consistently held software products do not infringe claims incorporating hardware components. *See, e.g.*, *CloudofChange*, 123 F.4th at 1340; *Synchronoss*, 987 F.3d at 1369; *Centillion*, 631 F.3d at 1286 ("Supplying the software for the customer to use is not the same as using the system.")

Hardware required in the '137 and '849 patents includes, for example, "at least one camera configured to capture a photographic image of a person." Dkt. 1-1 at col. 17:54-55; Dkt. 1-5 at col. 19:66-20:2. But the alleged excerpt from FaceFirst's website to which the Complaint compares this element merely indicates that FaceFirst's software is compatible with various commercially available third-party cameras. Dkt. 1-2 at 2-3 ("FaceFirst's face matching technology *works with* many modern camera systems." [emphasis added]). Neither the Complaint nor the claim chart plausibly allege that FaceFirst itself includes any camera with the software.

The claim charts also confirm that the accused product does not include the database "controlled by a second party" or "third party" required by all of the asserted claims. Dkt 1-1 at col. 18:11-12; Dkt. 1-3 at col. 18:8-9; Dkt. 1-5 at col. 20:27-28. Any database related to the accused product is supplied by the user of FaceFirst's software. Moreover, as explained above, the same entity that operates the rest of the software platform controls the database—not a "second party" or "third party" as required for infringement of the claims. Dkt. 1-2 at 10; Dkt 1-4 at 10; Dkt. 1-6 at 8.

The method claims of the '161 patent require "providing at least on entry port for persons to enter into the venue." Dkt. 1-4 at 3. But the claim chart allegedly quotes an excerpt from FaceFirst's website describing how FaceFirst's software can identify when a known offender enters the *customer's* location. *Id.*. Thus, according to the Complaint, if anyone "provid[es] at

least one entry port," it is the customer, not FaceFirst. The '161 patent further requires "forming a photographic image of each person who approaches." Dkt. 1-4 at 4. But again, the claim chart merely shows compatibility with third party cameras, making clear that FaceFirst's customer, not FaceFirst or the accused product, must carry out the step of taking the photograph.

In sum, Kephart's claim charts show that multiple elements of the asserted claims are missing from the accused product, thereby demonstrating FaceFirst does not make, use, sell, or offer to sell a method or system that infringes the patents in suit.

### 4. The Complaint fails to state a claim that FaceFirst indirectly infringes the patents in suit.

Kephart's assertions of induced and contributory infringement fail as a matter of law for two reasons: First, as explained above, it is not possible for any single entity to practice each and every step of the method claims or put the entire claimed systems into service, because the claims require at least two different parties to separately control key elements. As a result, there can be no direct infringement of any of the asserted claims. Without direct infringement there can be no indirect infringement. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014); *see also*, *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993) ("Liability for either active inducement of infringement or for contributory infringement is dependent upon the existence of direct infringement.").

Second, indirect infringement requires Kephart to allege and prove that FaceFirst knew of the patents in suit and intended or knew that its conduct would result in infringement of the patents. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015); *Addiction and Detoxification Institute L.L.C. v. Carpenter*, 620 Fed.Appx. 934, 938 (Fed. Cir. 2015). But the Complaint merely alleges that FaceFirst instructs others to use its products "such as to cause infringement" of the patents in suit. Dkt. 1 ¶¶ 11-12, 19-20, 27-28. There is no allegation that

FaceFirst knew about the patents in suit or knew such use would infringe the patents.

Accordingly, the Complaint fails to state a claim for induced and contributory infringement.

Kephart's indirect infringement claims must be dismissed with prejudice.

## IV.    VENUE IS NOT PROPER IN THE WESTERN DISTRICT OF TEXAS.

Kephart's Complaint should be dismissed for the separate and independent reason that

the Western District of Texas is not a proper venue for this case.  Fed. R. Civ. P. 12(b)(3).

Venue for patent cases is appropriate only in the judicial district "where the defendant resides,"

or "where the defendant has committed acts of infringement and has a regular and established

place of business."  28 U.S.C. § 1400(b); *TC Heartland LLC v. Kraft Foods Group Brands LLC*,

581 U.S. 258, 265-66 (2017) (affirming that 28 U.S.C. § 1400(b) is the "exclusive provision

controlling venue in patent infringement proceedings").

"When the defendant challenges venue in a patent case, 'the Plaintiff bears the burden of

establishing proper venue.'" *Intirion Corp. v. College Prods.*, 669 F. Supp. 3d 650, 654 (W.D.

Tex. 2023) (quoting *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018)).  Consistent

with the weight of Circuit Court of Appeals authority, this Court does not accept a plaintiff's

venue allegations as true "where the defendant offers a contradictory affidavit or evidence."  *Id.*

at 655 (citing *EMA Electromechanics, Inc. v. Siemens Corp.*, No. 6:21-CV-1001-ADA, 2022 WL

1241967, at *7-8 (W.D. Tex. Apr. 26, 2022)).

For purposes of section 1400(b), a defendant resides only in its state of incorporation.

*TC Heartland*, 581 U.S. at 270.  The Complaint alleges, and there is no dispute, that FaceFirst is

"a corporation organized and existing under the laws of Delaware."  Dkt. 1 ¶ 2.  Accordingly,

venue is not proper in the Western District of Texas based on FaceFirst's residence.

The Complaint further alleges that "Defendant has committed acts of infringement . . . in

this District."  *Id.* ¶ 5.  But the declaration of Daniel Merkle, FaceFirst's CEO, refutes Kephart's

conclusory allegation.  As Mr. Merkle explains, FaceFirst maintains a small office in Austin, Texas, but the activities at the Austin office are very limited.  Merkle Decl. ¶ 5.  No one at FaceFirst's Austin office has ever been involved with making, using, selling, or offering to sell FaceFirst's face matching software.  *Id.* ¶¶ 5-7.  FaceFirst has no other place of business in the Western District of Texas.  *Id.* ¶ 5.  None of FaceFirst's customers use the accused software in the Western District of Texas.  *Id.* ¶ 8.  Thus, even assuming *arguendo* that the accused product infringes any of the patents in suit, FaceFirst has not committed any alleged acts of infringement in the Western District of Texas.  Venue is therefore not proper in the Western District of Texas under 28 U.S.C. § 1400(b).

## V.   <u>CONCLUSION</u>

The patents in suit present a paradigmatic example of a patent-ineligible abstract idea. Kephart seeks to monopolize the basic idea that people can be recognized by matching their photographs to a database.  The patents in suit do not claim any technological advance to improve the tools used for this human mental process, but rather implement the idea using conventional, commercially available technology in the field of event security.  Federal Circuit precedent is clear that neither the use of conventional technology nor limitation to a particular field can supply the inventive concept necessary to transform the abstract idea into patentable subject matter.  And even if the patents in suit were directed to patentable subject matter, the Complaint and its attachments confirm there is no infringement here.  The claims cannot be practiced by any single entity, let alone FaceFirst, and the accused product is software, not the system of cameras, computer circuits, stadium turnstiles, and other physical components described in the asserted claims.  Finally, venue is not proper in this district because FaceFirst has not made, used, sold, or offered to sell the accused product anywhere in the Western District of Texas.  FaceFirst respectfully requests that the Court dismiss the Complaint with prejudice.

Dated:  January 30, 2025                          Respectfully submitted,

By:  _/s/ Barry K. Shelton_
       Barry K. Shelton
       Texas State Bar No. 24055029
       SHELTON COBURN LLP
       311 RR 620, Suite 205
       Austin, TX 78734-4775
       bshelton@sheltoncoburn.com
       Telephone:  (512) 263-2165
       Facsimile:  (512) 263-2166

and

       Ronald P. Oines (admitted *pro hac vice*)
       CA State Bar No. 145016
       roines@rutan.com
       Alexander P. Swanson (admitted *pro hac vice*)
       CA State Bar No. 280947
       aswanson@rutan.com
       RUTAN & TUCKER, LLP
       18575 Jamboree Road, 9th Flr.
       Irvine, C  92612
       Telephone:  (714) 641-5100
       Facsimile:  (714) 546-9035

       *Attorneys For Defendant FaceFirst, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of the above and foregoing

document has been served on all counsel of record via the Court's ECF system.


*/s/ Barry K. Shelton*
Barry K. Shelton