**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| **KEPHART CONSULTING, LLC,** | |
| **Plaintiff,** | **Case No.: 7:24-cv-00234-DC-DTG** |
| **v.** | |
| **FACEFIRST, INC.,** | **Jury Trial Demanded** |
| **Defendant** | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

## TABLE OF CONTENTS

I.     RELEVANT FACTUAL BACKGROUND AND INTRODUCTION ..............................1

II.    STANDARD FOR PATENTABLE SUBJECT MATTER ..................................................3

III.   THE FOCUS OF THE CLAIMED ADVANCE OVER THE PRIOR ART ESTABLISHES THE CLAIMS ARE DIRECTED TO PATENTABLE SUBJECT MATTER ....................................................................................................................4

    A.  The Claims of the Patents-in-suit Are Directed to Concrete Steps ................................5

    B.  Defendant Oversimplifies the Claimed Invention and Ignores Important Limitations. ..............................................................................................................9

    C.  Defendant's Caselaw is Not Applicable as the Claims at Issue are Very Different .....10

IV.   THERE ARE INVENTIVE ASPECTS OF THE PATENTS-IN-SUIT THAT PRECLUDE DISMISSAL ....................................................................................................................10

V.    INFRINGEMENT ................................................................................................................12

VI.   VENUE ................................................................................................................................15

VI.   LEAVE TO AMEND ..........................................................................................................15

VII.  CONCLUSION AND PRAYER ........................................................................................16

## TABLE OF AUTHORITIES

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018)............. 14

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253 (Fed. Cir. 2016) ......................... 4

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 134 S. Ct. 2347 (2014)................................................................................................................... 4, 5, 7, 13

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371 (Fed. Cir. 2015) ............................... 9

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ................................................................................ 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................... 16

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016). 5, 7

*Beacon Navigation GmbH v. Bayerische Motoren Werke AG*, No. 2:13-cv-11410-MAG-EAS, 2023 WL 4852351 (E.D. Mich. July 28, 2023) ......................................................... 19

*Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955 (2007) .................................................................. 18

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ..................................................................... 16

*Bell v. Miller*, Case No. 1:18-cv-522, 2018 U.S. Dist. LEXIS 151438 (W.D. Mich. 2018) .. 21, 20

*Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018)........................................................ 5, 14

*BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018) ........................................ 13

*ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019) ...................................... 9

*Choon's Design, LLC v. Zenacon, LLC,* No. 2:13-CV-13568, 2015 WL 539441 (E.D. Mich. Feb. 9, 2015) ........................................................................................................ 17

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018) ................ 4

*Decker v. Infante, Case* No. 19-11654, 2023 U.S. Dist. LEXIS 136881 (E.D. Mich. Aug. 7, 2023) ................................................................................................................ 20

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256 (Fed. Cir. 2018).................... 17, 18, 19

*Doe v. Baum,* 903 F.3d 575 (6th Cir. 2018)............................................................................... 16

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016)............................................... 11

*Eyetalk365, LLC v. Zmodo Tech. Corp.*, 356 F. Supp. 3d 1059 (D. Nev. 2018).......................... 7

*Guidry v. Am. Pub. Life Ins. Co*, 512 F.3d 177 (5th Cir. 2007).................................................. 14

*Hunton Energy Holdings, LLC v. HL Seawater Holdings, LLC*, 539 F. Supp. 3d 685 (S.D. Tex. 2021)............................................................................................................... 17

*Internet Patents Corp, v. Active Network, Inc.*, 790 F.3d 1343 (Fed. Cir. 2015) .......................... 4

*Lifetime Indus., Inc. v. Trim-Lok, Inc.,* 869 F.3d 1372 (Fed. Cir. 2017) ....................................... 16

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 132 S. Ct. 1289 (2012) .... 4, 5

*McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016) ...................... 4, 5

*Michigan Motor Techs. LLC v. Hyundai Motor Co.,* Civil Action No. 17-CV-12901, 2018
    U.S. Dist. LEXIS 226517 (E.D. Mich. Aug. 9, 2018) ......................................................... 17

*Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91 (2011) ................................................................. 14

*Mobile Acuity,* 110 F. 4th at 1292 ................................................................................................ 13

*PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310 (Fed. Cir. 2021) .................................... 12

*Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.,* 827 F.3d 1042 (Fed. Cir. 2016) .............................. 4

*SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018) ........................................ 10, 12

*Swift v. Cnty. of Wayne,* No. 10-12911, 2011 WL 1102785 (E.D. Mich. Mar. 23, 2011) ........... 16

*TLI Communs. LLC v. AV Auto., L.L.C. (In re TLI Communs. LLC Patent Litig.)*, 823 F.3d
    607 (Fed. Cir. 2016) ........................................................................................................... 9

*Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1092 (Fed. Cir. 2019) ............................. 7

**Constitutional Provisions & Statutes**

35 U.S.C. § 101 ............................................................................................................................. 15

35 U.S.C. § 102 ............................................................................................................................. 15

35 U.S.C. § 103 ............................................................................................................................. 15

35 U.S.C. § 271 ............................................................................................................................. 17

Plaintiff Kephart Consulting, LLC files this Response to Defendant FaceFirst, Inc.'s Motion to Dismiss[1] ("Defendant's Motion") showing the Court that said motion should be denied.

## I.    RELEVANT FACTUAL BACKGROUND AND INTRODUCTION

Plaintiff filed the Original Complaint on September 23, 2024, seeking relief from patent infringement of the claims of U.S. Patent No. 10,796,137 ("the '137 patent"), U.S. Patent No. 9,773,161 ("the '161 patent") and U.S. Patent No. 10,248,849 ("the '849 patent") (referred to as the "Patents-in-Suit") by Defendant.  The patents-in-suit share a disclosure.

On October 6, 2020, the '137 patent, entitled "Technique for Providing Security" was duly and legally issued by the U.S. Patent and Trademark Office. On September 26, 2017, the '161 patent, entitled "Large Venue Security Method" was duly and legally issued by the U.S. Patent and Trademark Office. 22.     On April 2, 2019, the '849 patent, entitled "Technique for Providing Security to an Area" was duly and legally issued by the U.S. Patent and Trademark Office.

For purposes of discussion herein, the claims of the '137 patent will be taken as representative of the claims of the patents-in-suit. This should in no way be construed as a concession that the claims of the patents-in-suit are not patentably distinct.

The claimed invention of the '137 patent relates to novel and improved computer systems that provide a solution to a prior art technological problem of providing security in large structures such as stadiums or arenas. Embodiments of the system include a computer circuit configured to receive [a] captured photographic image of [a] person, transmit the captured photographic image of the person for a process to be performed for comparing the captured photographic image of the person to facial images of persons of interest included in a database to detect a likely match, receive

---

[1] Doc. No. 17.

an alert that the person is a person of interest, and control to alert at least one of one or more law enforcement officers or one or more security personnel of the detection of the likely match.[2]

Embodiments of the claimed invention provide numerous benefits over the prior art, including, but not limited to, making stadiums, sporting venues, and other crowded venues, safer for attending fans.[3] The '137 patent discusses how embodiments detect persons known to have been violent and exclude those persons from [a] venue.[4]

The '137 patent's specification teaches that the claimed invention is a solution to a security problem that was not available prior to the invention of the claims of the '137 patent:

> Apart from conventional fan violence, our post 9-11 world also requires team owners and stadium operators to be consider terror attacks by suicidal fanatics. Fears that a terrorist might strike at a sporting event, where large crowds are gathered, are a genuine concern. Security personnel routinely inspect backpacks and large purses of fans upon entry, but the identity of those fans is an unknown.
>
> As should be apparent, current security measures employed at sporting venues are not pro-active. In particular, they do not include significant operations to exclude from the venue persons who are likely to be violent and/or dangerous.
>
> Accordingly, it is an object of the present disclosure to make sporting venues safer for attending fans.[5]

Further, there is no record evidence of the claimed solution existing prior to the invention of the claims of the '137 patent and thus there is no record evidence that the claimed improvements are conventional.

---

[2] Doc. No. 1-1, Claim 1.
[3] See id. at 17: 34-73.
[4] See id. at 17: 40-43.
[5] Id. at 2: 8-22.

## II.    STANDARD FOR PATENTABLE SUBJECT MATTER

The Supreme Court has articulated a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts."[6]  At step one, the court must determine whether the claims are directed to one of the three patent-ineligible concepts.[7]  If not, "the claims satisfy [Section] 101 and [the court] need not proceed to the second step."[8]  If the claims are directed to a patent-ineligible concept, the court must proceed to the second step of identifying an "inventive concept i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself."[9]

At step one, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter."[10]  However, "courts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims."[11]

At step two, the court must "look to both the claim as a whole and the individual claim elements" to determine whether they "amount[ ] to significantly more than a patent upon

---

[6] *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217, 134 S. Ct. 2347 (2014); *see also Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77-78, 132 S. Ct. 1289 (2012).

[7] *Alice*, 573 U.S. at 217.

[8] *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018).

[9] *Alice*, 573 U.S. at 217-18 (quoting *Mayo*, 566 U.S. at 72-73).

[10] *Internet Patents Corp, v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) ("*DIRECTV*") ("The 'abstract idea' step of the inquiry calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter.").

[11] *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) (internal quotation marks omitted). "At step one, therefore, it is not enough to merely identify a patent-ineligible concept underlying the claim; [courts] must determine whether that patent-ineligible concept is what the claim is 'directed to." *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016).

the ineligible concept itself"[12] "Simply appending conventional steps, specified at a high level of generality, [is] not enough to supply an inventive concept."[13] Instead, the claim elements must involve more than performance of "well-understood, routine, [and] conventional activities previously known to the industry." [14] "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. . . . [A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces."[15]

Applying these standards, the claims of the patents-in-suit are patent eligible for the reasons given below.

## III.    THE FOCUS OF THE CLAIMED ADVANCE OVER THE PRIOR ART ESTABLISHES THE CLAIMS ARE DIRECTED TO PATENTABLE SUBJECT MATTER

Plaintiff's Claim 1 of the '137 patent is representative of the claims of the patents-in-suit.

Claim 1 provides:

1.    A system for providing security, the system comprising:

at least one camera configured to capture a photographic image of a person in view of the at least one camera; and

**a computer circuit** configured to:

receive the captured photographic image of the person in view of at least one camera,

transmit the captured photographic image of the person in view of the at least one camera for a process to be performed for comparing the captured photographic image of the person in view of the at least one camera to facial images of persons of interest included in a database to detect a likely match,

---

[12] *McRO*, 837 F.3d at 1312.
[13] *Alice*, 573 U.S. at 222
[14] *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018) (citation and internal quotation marks omitted); *see also Mayo*, 566 U.S. at 73.
[15] *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

> receive an alert that the person in view of the at least one camera is a person of interest in response to a detection of the likely match between the captured photographic image of the person in view of the at least one camera and a facial image of the person of interest, and

> control to alert at least one of one or more law enforcement officers or one or more security personnel of the detection of the likely match between the captured photographic image of the person in view of the at least one camera and the facial image of the person of interest,

> wherein the system is controlled by a first party and the database is controlled by a second party.[16]

The focus of the claimed invention of the '137 patent is a computer circuit programmed to **receive** a captured image, **transmit** the captured photographic image a process to be performed for comparing the captured photographic image of the person in view of the at least one camera to facial images of persons of interest included in a database to detect a likely match, and **receive an alert** that the person in view of the at least one camera is a person of interest.[17] The dependent claims[18] add further details.

### A. The Claims of the Patents-in-Suit Are Directed to Concrete Steps

To properly evaluate whether asserted claims "are directed to a patent-eligible concept,"[19] a court must examine "the focus of the claimed advance over the prior art to determine if the character of the claim as a whole, considered in light of the specification, is directed to excluded subject matter."[20] In other words, abstractness is determined by analyzing the claim as a whole, not whether each element standing alone is abstract.[21] Taking claim 1 as a whole, the focus of

---

[16] Id. at 17:52-18:13 (emphasis added).
[17] Id. at claim 1, Abstract and 17:1-4.
[18] E.g., dependent claim 2 adds that the computer circuit receives credentials and indexes the captured image in view of the credentials.
[19] *Alice Corp. Pty. Ltd.*, 573 U.S. at 218.
[20] *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1092 (Fed. Cir. 2019).
[21] *See e.g., Alice Corp.*, 573 U.S. 208, 219, 134 S. Ct. 2347, 2359 (2014); *Eyetalk365, LLC v. Zmodo Tech. Corp.*, 356 F. Supp. 3d 1059, 1067 (D. Nev. 2018).

the claims is a computer circuit configured to receive the captured photographic image of [a] person, transmit the captured photographic image of the person for a process to be performed for comparing the captured photographic image of the person to facial images of persons of interest included in a database to detect a likely match, receive an alert that the person is a person of interest, and control to alert at least one of one or more law enforcement officers or one or more security personnel of the detection of the likely match.[22]

This Focus is supported by the Abstract:

(57) **ABSTRACT**

A method for reducing violence within crowded venues is provided. The method includes reading license plates of vehicles passing into entry ports of a parking area, and capturing facial images of persons seeking admission to the venue. A computer compares such license plates to a database of vehicle license plates associated with persons with past histories of violence. A computer also compares captured facial images to a database of facial data for persons with past violent histories. Upon detecting a match, the computer creates an alert presented to law enforcement officers to facilitate detention of such persons for investigation. Information recorded on entry tickets is scanned and saved together with the facial image of the ticket holder. If a violent act occurs, cameras within the venue capture facial images of participants. The computer matches such participants to stored identifying data to assist in the identification and apprehension of such persons.

---

[22] Doc. No. 1-1, Claim 1.

Assessing the focus of the claims from the Abstract is proper as the directed inquiry may also involve looking to the Abstract or patent specification to understand the problem facing the inventor and, ultimately, what the patent describes as the invention.[23]

Further support for this Focus is provided in the representative claim, Claim 1:

a computer circuit configured to:
    receive the captured photographic image of the person
        in view of at least one camera,
                                                                    [24]

**and**

transmit the captured photographic image of the person
in view of the at least one camera for a process to be
performed for comparing the captured photographic
image of the person in view of the at least one
camera to facial images of persons of interest
included in a database to detect a likely match,

As well, the specification of the '137 patent provides further support for the Focus in the Background of Invention where it specifies that:

---

[23] *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767 (Fed. Cir. 2019) *citing TLI Communs. LLC v. AV Auto., L.L.C. (In re TLI Communs. LLC Patent Litig.)*, 823 F.3d 607, 612 (Fed. Cir. 2016); *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1376 (Fed. Cir. 2015) (in the step one analysis, pointing to statements from the specification that supported the identified focus was the key discovery described in the patent).
[24] Doc. No. 1-1 at 16:56-60.

> While the problems posed by fan violence are clearly recognized, the police and security officials whose duty it is to maintain order have not been able to make optimum use of available technologies to deal with such problems, and have, instead, been relying primarily on outdated, reactive tactics. Currently, efforts used to counter fan violence rely upon the visible presence of police and security staff interspersed throughout the stadium to deter such incidents, and to detect and respond to fan violence after it happens. [25]

The specification further highlights the importance of the focus:

> *A computer is used to compare the photographic image of each person seeking entry to the facial images that were already compiled in the computerized database; if the computer detects a likely match between the facial image of a person about to enter the venue with a facial image already compiled in the computerized database, the computer generates an alert.* [26]

The '137 patent specification provides substantial detail for the claimed invention and its interconnectivity with each claimed element for sufficient specificity to be concrete. [27] For instance, the '137 patent provides reference to systems and methods through the detailed system flowcharts that can be used to perform the claimed inventions;[28] for example, Figure 6 is a block diagram showing the basic components of a system for implementing the a claimed method; Figure 8 is a flowchart showing operations performed as each fan enters the stadium through a fan entry gate; and Figure 9 is a flowchart showing the operations performed if and when an instance of spontaneous fan violence occurs. Thus, detail is provided on how the claimed invention operates in several illustrative embodiments.

---

[25] Id. at 1:54-64.
[26] *See id.* at 2:63-3:1.
[27] *See, e.g., SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018).
[28] *See* Doc. No. 1-1 at 6:21-59.

### B. Defendant Oversimplifies the Claimed Invention and Ignores Important Limitations.

Defendant's Motion is an oversimplification and focuses on claim elements rather than the claim as a whole. Defendant "describe[s] the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule."[29] For instance, Defendant's Motion opens its argument over generalizing the teachings of the patent by asserting that the claims of the patents-in-suit are directed to the "abstract idea of comparing a photograph of a person to a collection of images representing potential security threats to identify a match."[30] Defendant gives only cursory review of the specification to derive its focus, but rather points to caselaw, namely *Alice*. However, Defendant's cited case is distinguishable because the claims of the patents-in-suit are directed to tools for solving a prior art technological problem of screening attendees that includes "compiling a computerized database of facial images of persons who are known to have been violent during similar events in the past" whereas, in Defendant's case, the Federal Circuit found "the focus of the claims [at issue in that case was] not on ... an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools.[31] The claims of the '137 patent are the tool providing a specific technological solution. In other words, the claims of the '137 patent are not directed to a result but rather a specific and concrete solution for solving the problem of screening significant numbers of attendees at a large location.[32]

---

[29] *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016).
[30] Doc. No. 17 at p. 1.
[31] *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1318 (Fed. Cir. 2021).
[32] See Doc. No. 1-1 at 5:41-53.

**C.  Defendant's Caselaw is Not Applicable as the Claims at Issue are Very Different**

Defendant cites numerous cases but provides no solid analysis of the claimed invention as a whole, and instead subdivides the claims into components and attacks the components individually.[33] The asserted claims of the '137 patent are not generic in any sense, but rather claim a specific system and process with substantial detail for the claimed invention and its interconnectivity with each claimed element for sufficient specificity to be concrete.[34]  Thus, the claims of the '137 patent do not merely claim a result and are therefore distinguishable from the claims in *Mobile Acuity*.[35]

The claims of the '137 patent are directed to a tool: 'a computer circuit configured to receive the captured photographic image of [a] person, transmit the captured photographic image of the person for a process to be performed for comparing the captured photographic image of the person to facial images of persons of interest included in a database to detect a likely match, receive an alert that the person is a person of interest, and control to alert at least one of one or more law enforcement officers or one or more security personnel of the detection of the likely match.[36]

**IV.    THERE ARE INVENTIVE ASPECTS OF THE PATENTS-IN-SUIT THAT PRECLUDE DISMISSAL**

To evaluate whether asserted claims satisfy *Alice*'s second step of "search[ing] for an 'inventive concept,'"[37] a court considers "the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application."[38] While a court may determine patent eligibility at the

---

[33] Doc. No. 17 at 7-9.

[34] *See, e.g., SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018).

[35] *Mobile Acuity,* 110 F. 4th at 1292-1293.

[36] Doc. No. 1-1, Claim 1.

[37] *Alice*, 573 U.S. at 217, 134 S.Ct. 2347

[38] *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1289 (Fed. Cir. 2018)

Rule 12(b)(6) stage, it is "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law."[39]  "Plausible factual allegations may preclude dismissing a case under § 101."[40]  All facts pertinent to the eligibility question must be proven by clear and convincing evidence.[41]  Here, Plaintiff makes numerous factual allegations in the patent specification that are not rebutted by Defendant, which must be taken as true at this stage of the litigation, [42] to-wit:

> It is still another object of the present disclosure to reduce costs borne by team owners and stadium managers in order to provide a reasonably acceptable level of safety and security.
>
> Yet another object of the present disclosure is to provide a method of detecting, and excluding from the venue, persons with past histories of violent tendencies, preferably before they enter the venue.
>
> A further object of the present disclosure is to assist and aid police and venue security personnel in identifying and detaining person who actively engage in violent acts within the venue during an event. [43]

---

[39] *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).
[40] *Id.*
[41] *HP Inc.*, 881 F.3d at 1368 citing *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).
[42] *Aatrix Software, Inc.*, 882 F.3d at 1125; *Guidry v. Am. Pub. Life Ins. Co*, 512 F.3d 177, 180 (5th Cir. 2007).
[43] Doc. No. 1-1 at 2:25-36.

The specification further notes the prominence of the focus of the invention:

> base of vehicle license plates associated with persons with past histories of violence. A computer also compares captured facial images to a database of facial data for persons with past violent histories. Upon detecting a match, the computer creates an alert presented to law enforcement officers to facilitate detention of such persons for investigation. Information recorded on entry tickets is scanned and saved together with the facial image of the ticket holder. If a violent act occurs, cameras within the venue capture facial images of participants. The computer matches such participants to stored identifying data to assist in the identification and apprehension of such persons.
>
> [44]

With all due respect to Defendant's assertions, Defendant's argument attacking Plaintiff's claims under 35 USC §101 is essentially an attempt to present an argument under 35 USC §§102, 103 without providing the evidence to substantiate it. For example, Defendant identifies Plaintiff's claimed elements as "implemented using conventional components, such as generic cameras, computers, video monitors, internet connections, databases and commercially available facial recognition software"[45] without noting prior art that teaches the elements.  A motion to dismiss under 35 USC §101 as filed by Defendant is not the correct avenue to try to invalidate a patent under 35 USC §§102, 103.

## V.    INFRINGEMENT

The question before the Court is whether Plaintiff's Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  In a patent infringement case, "[t]here is no requirement for [the plaintiff] to 'prove its case at the pleading stage.'" *Lifetime Indus., Inc. v. Trim-Lok, Inc.,* 869 F.3d 1372, 1379 (Fed. Cir. 2017).  The Federal Circuit "requires that a complaint place the infringer on

---

[44] *See id.* at Abstract.
[45] Doc. No. 17, p. 4.

notice of what activity . . . is being accused of infringement." *Id.* Indeed, when evaluating the sufficiency of the complaint under a Rule 12(b)(6) motion to dismiss, the Court must "accept all of the plaintiff's factual allegations as true," "draw all reasonable inferences in the plaintiff's favor," and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." *Doe v. Baum,* 903 F.3d 575, 581 (6th Cir. 2018). "If it is at all plausible (beyond a wing and a prayer) that a plaintiff would succeed if he proved everything in his complaint, the case proceeds." *Id.* Hence, at the pleading stage, a plaintiff need not plead and prove its entire case. Rather, for the case to proceed, a plaintiff simply needs to present "factual allegations" that "raise a right to relief above the speculative level." *See Swift v. Cnty. of Wayne,* No. 10-12911, 2011 WL 1102785, at *2 (E.D. Mich. Mar. 23, 2011) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)). It is defendant's burden to prove the "complaint does not permit the plausible inferences that the defendant is liable for the conduct alleged." *Choon's Design, LLC v. Zenacon, LLC,* No. 2:13-CV-13568, 2015 WL 539441, at *8 (E.D. Mich. Feb. 9, 2015).

To state a claim for patent infringement under 35 U.S.C. § 271, a plaintiff need only give the defendant "fair notice" of the infringement claim and "the grounds upon which it rests." *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018). "Fair notice," in turn, requires the plaintiff to plausibly allege that the accused product meets "each and every element of at least one claim" of the asserted patent. *Disc Disease*, 888 F.3d at 1260. *See, also, Michigan Motor Techs. LLC v. Hyundai Motor Co.,* Civil Action No. 17-CV-12901, 2018 U.S. Dist. LEXIS 226517, at *3 (E.D. Mich. Aug. 9, 2018) (denying motion to dismiss where the complaint "identifies the patent at issue and the claim(s) plaintiff alleges defendants have infringed, and presents diagrams, tables, and other information that shed additional light on the nature of the allegations"); *Hunton Energy Holdings, LLC v. HL Seawater Holdings, LLC*, 539 F. Supp. 3d 685,

694 (S.D. Tex. 2021) (**a** defendant has fair notice of a direct infringement claim "if the complaint specifically identifies the allegedly infringing product and the patent the product infringes"). Defendant has, essentially, attempted to turn a motion to dismiss into a challenge of the merits of Plaintiff's patent claims. Because Plaintiff's Original Complaint satisfies the plausibility standard of *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) and *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955 (2007), and provides Defendant with fair notice of infringement, Defendant's motion to dismiss should be denied.

Plaintiff respectfully submits that its Original Complaint and exhibits thereto have provided Defendant with the requisite factual allegations which, taken as true, plausibly allege that Defendant infringes the patent in suit.

The claim charts attached to Plaintiff's Original Complaint as Exhibit B, D and F (Doc. Nos. 1-2, 1-4, and 1-6, respectively) illustrate how Defendant infringes the patents-in-suit. Plaintiff's Original Complaint alleges that Defendant put the inventions claimed by the patent in suit into service, and, in addition, that Defendant "caused those claimed-invention embodiments as a whole to perform," and that Defendant obtained monetary and commercial benefit from it (*E.g.*, Doc. No. 1, ¶ 8).

In *Disc Disease*, 888 F.3d 1256, the court found a complaint sufficiently pled direct infringement where it attached the asserted patents to the complaint, specifically identified the three accused products by name, attached photos of the product packaging, and "alleged that the accused products 'meet each and every element of at least one claim of the [accused patents], either literally or equivalently." *Id*. at 1260. Plaintiff's Original Complaint is sufficient for the same reasons. Here, identification of the accused products that embody Plaintiff's claimed invention, combined with the claim charts attached to the Original Complaint, are more than sufficient to put

Defendant on notice as to what Defendant must defend. "[A] plaintiff 'is not required to prove its case at the pleading stage'…. the plausibility requirement is not akin to a 'probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged." *Beacon Navigation GmbH v. Bayerische Motoren Werke AG*, No. 2:13-cv-11410-MAG-EAS, 2023 WL 4852351, at *8 (E.D. Mich. July 28, 2023).

As in *Disc Disease*, Plaintiff's pleading is sufficient to allege infringement of Plaintiff's asserted claims.

## VI.    VENUE

Defendant asserts that venue is not proper in the Western District of Texas because Defendant's office space in this district is small ("FaceFirst rents a single cubicle of office space in Austin, Texas") and that office space is allegedly not used to infringe the patents-in-suit ("that office is not involved in developing, using, or selling the accused software").[46]

Plaintiff respectfully disagrees. Not only does Defendant have a regular and established business in this district, but Defendant is also licensed to do business throughout Texas.[47] Defendant has thus availed itself of the benefits of acting in the State of Texas. Defendant Plaintiff has adequately pleaded infringement in this district and anticipates that Discovery will yield further evidence of infringement. Defendant's motion to dismiss for improper venue should be denied.

## VII.    LEAVE TO AMEND

Plaintiff respectfully requests leave to amend if the Court is inclined to grant Defendant's Motion to Dismiss in any respect. Plaintiff believes that it has addressed each of Defendant's points, but requests leave to amend if the Court disagrees, particularly as this Motion is the first

---

[46] Doc. 17, p. 4.
[47] Texas Sec. of State Filing No. 804134578, Tax ID. 32079934702.

time the Court has had the opportunity to address the sufficiency of Plaintiff's pleadings. To the extent necessary, Plaintiff requests leave to amend.

Given the liberal standard for amending pleadings,[48] leave to amend is warranted, to permit plaintiff to assert factual allegations and theories, so that Plaintiff's case can be adjudicated on its merits. *See Decker v. Infante, Case* No. 19-11654, 2023 U.S. Dist. LEXIS 136881 (E.D. Mich. Aug. 7, 2023); *Bell v. Miller*, Case No. 1:18-cv-522, 2018 U.S. Dist. LEXIS 151438, at *2 (W.D. Mich. 2018).

## V.  CONCLUSION AND PRAYER

Plaintiff respectfully requests and prays that the Court deny, in its entirety, Defendant's Motion to Dismiss.

Respectfully submitted,

**Ramey LLP**

/s/ *William P. Ramey, III*
William P. Ramey, III
Texas State Bar No. 24027643
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
(713) 426-3923 (telephone)
wramey@rameyfirm.com

***Attorneys for Kephart Consulting, LLC***

---

[48] *See Decker v. Infante, Case* No. 19-11654, 2023 U.S. Dist. LEXIS 136881 (E.D. Mich. Aug. 7, 2023); *Bell v. Miller*, Case No. 1:18-cv-522, 2018 U.S. Dist. LEXIS 151438, at *2 (W.D. Mich. 2018).

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to the Federal Rules of Civil Procedure, I hereby certify that all counsel of record who have appeared in this case are being served on this day of February 13, 2025, with a copy of the foregoing via CM/ECF.

<u>*/s/ William P. Ramey, III*</u>
William P. Ramey, III